UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM F. ACHTZIGER,

                                Plaintiff,

       -vs-

                                                        02-CV-0566-C(Sr)

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                Defendant.

Plaintiff William F. Achtziger initiated this action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security ("the Commissioner") denying plaintiff's application for Social Security disability insurance ("SSDI") benefits.[1] The Commissioner has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 16), and plaintiff has filed a cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Item 24). For the following reasons, the Commissioner's motion is denied, and plaintiff's cross-motion is granted.

## BACKGROUND

Plaintiff was born on March 29, 1956 (Tr. 24).[2] He applied for SSDI benefits on March 19, 1999, alleging disability as of September 17,1997 due to pain and stiffness in

---

[1] This case was transferred to the undersigned by order of the Hon. Richard J. Arcara dated October 26, 2006 (Item 27).

[2] References preceded by "Tr." are to page numbers of the transcript of the administrative record, filed by defendant as part of the answer to the complaint (Item 10).

the lower back and legs (Tr. 91-97).  Plaintiff's application was denied initially on May 18, 1999 (Tr. 65-68).  Plaintiff requested a hearing, which was held on March 15, 2000 before Administrative Law Judge ("ALJ") Richard D. Hines (Tr. 17-28).  Plaintiff testified and was represented by counsel at the hearing.

In a partially favorable decision dated May 24, 2000, the ALJ found that plaintiff was disabled during the closed period of June 23, 1998 to November 1999.  However, the ALJ determined that this disability ceased in November 1999.  Thus, from that date, plaintiff was not under a disability within the meaning of the Social Security Act, nor was he disabled prior to June 23, 1998 (*Id.*).

Following the sequential evaluation process outlined in the Social Security Administration Regulations, *see* 20 C.F.R. § 404.1520, the ALJ reviewed the medical evidence and determined that plaintiff's impairments (including degenerative disc disease of the lumbar spine with a lumbar fusion), while severe, did not meet or equal the criteria of an impairment listed in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ considered plaintiff's allegations and testimony regarding his functional limitations prior to June 23, 1998 and as of November 1999, but found plaintiff to be "not totally credible" in this regard (Tr. 25).  The ALJ then found that while plaintiff was unable to perform his past work as a factory maintenance worker, a construction worker, and a copy machine repairer, plaintiff had the residual functional capacity ("RFC") for a range of light work[3] which, when considered along with plaintiff's

---

[3] "Light Work" is defined in 20 C.F.R § 404.1567(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very

2

age (44 at the time of the decision), educational background (high school or equivalent), and the application of the Medical Vocation Guidelines, 20 C.F.R. Pt. 404, Subpart P, Appendix 2 ("the Grids"), led to the conclusion that there are a significant number of jobs in the national economy that plaintiff could perform (Tr. 26). The ALJ's decision became the Commissioner's final determination on June 21, 2002, when the Appeals Council denied plaintiff's request for review (Tr. 7).[4]

Plaintiff then filed this action on August 7, 2002, pursuant to 42 U.S.C. § 405(g). On July 7, 2003, the Commissioner filed a motion for judgment on the pleadings on the ground that the ALJ's determination must be upheld, as it is supported by substantial evidence in the record (Item 16). Plaintiff filed a cross-motion for summary judgment, arguing that the ALJ failed to properly evaluate all of the objective medical evidence and the opinions of plaintiff's treating sources, failed to properly assess plaintiff's credibility, failed to evaluate the combination of plaintiff's medical impairments, and failed to establish that there was gainful work which the plaintiff could perform, thus resulting in erroneous findings regarding plaintiff's RFC (Item 24).

---

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[4] In plaintiff's brief, he notes that while his appeal was pending, on May 31, 2002, he filed a second application for SSDI benefits. On September 10, 2002, plaintiff was found disabled with an onset date of June 1, 2000 (Item 24, p. 2). Thus, the only periods at issue here are September 17, 1997 through June 23, 1998 and November 1999 until the date of the decision, May 24, 2000.

**DISCUSSION**

I.  **Scope of Judicial Review**

The Social Security Act states that upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. "The court's sole inquiry is 'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

However, "'[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards.'" *Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986) (quoting *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976)). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.

## II.     Standard for Determining Eligibility for Disability Benefits

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the

claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets her burden at the fifth step by resorting to the Grids.[5]  However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of September 17, 1997 (T. 20). Upon exhaustive review of plaintiff's medical records and in accordance with the second and third step of the sequential evaluation, the ALJ found that plaintiff suffered from pain and stiffness in the lower back and the legs which, while "severe," did not individually or in combination meet or equal the requirements of the Listings as of November 1999 (T. 20).

---

[5] The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education, and work experience in determining whether the claimant can engage in any substantial gainful work existing in the national economy.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

At the fourth step of the evaluation process, the ALJ determined that plaintiff's impairments prevented him from performing his past relevant work (Tr. 24). At this point, the burden shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy that plaintiff could perform, considering his RFC in conjunction with his age, education, and work experience.

In this regard, the ALJ first found that plaintiff retained the RFC from June 23, 1998 continuing to November 1999 to perform the requirements of work, except for "lifting and carrying more than ten pounds, repetitive bending, standing/walking more than two hours in a workday, and sitting for more than short periods." (Tr. 25). These functional limitations precluded plaintiff from engaging in even sedentary work, and therefore, there were not a significant number of jobs in the national economy that the claimant could perform irrespective of age, education, or work experience (Tr. 26). It is during this closed period that the ALJ determined that plaintiff was disabled.

However, as of November 1999, the claimant experienced medical improvement related to his ability to work (Tr. 25). Therefore, the ALJ found that "[f]or the periods of September 17, 1997 to June 23, 1998 and November 1999 to the present, the claimant has had the residual functioning capacity to perform the requirements of work except for: lifting and carrying more than ten pounds frequently and twenty pounds occasionally" (*Id.*). This determination indicates that the plaintiff retained the ability and residual functional capacity for the full range of light work. In applying Medical Vocational Rule 202.20 of the Grids, the ALJ concluded that as of November 1999, there existed a significant number of jobs in the national economy that plaintiff could perform considering his age (younger individual–44 years old at the time of the ALJ's

7

decision) and education (high school equivalent), requiring a finding of "not disabled" under the Social Security Act (Tr. 26).

In his motion for summary judgment, plaintiff contends that the ALJ, in finding him not disabled from the period of September 17, 1997 to June 23, 1998 and for November 1999 to the present, misapplied the established legal and regulatory standards by failing to give proper weight to the medical opinion of plaintiff's physicians and in finding plaintiff's testimony not credible. Furthermore, plaintiff asserts that he met the requirements in the Listings for a vertebrogenic disorder and that the ALJ did not establish that there was gainful employment in the national economy which the plaintiff could perform.

### III.    Evaluation of Medical Opinions

The Social Security Regulations require that the opinion of a claimant's treating physician, which reflects judgments about the nature and severity of the claimant's impairments, must be given "controlling weight" by the ALJ, as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); *see also Rosa*, 168 F.3d at 78-79. If the opinion of the treating physician as to the nature and severity of the claimant's impairment is not given controlling weight, the Regulations require the ALJ to apply several factors to decide how much weight to give the opinion, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether

the opinion is from a specialist." *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998), citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to the treating source's opinion, 20 C.F.R. § 404.1527(d)(2), and "cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (internal quotation omitted); *see also Rooney v. Apfel*, 160 F. Supp. 2d 454, 465 (E.D.N.Y. 2001).

As explained by the Social Security Administration, when the ALJ's determination:

> is not fully favorable, *e.g.*, is a denial . . .[,] the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The medical records indicate impairments of mild to moderate severity from September 17, 1997 to June 1998 (Tr. 21).  In his opinion, the ALJ relied upon the fact that as of January 1998, a Magnetic Resonance Imaging (MRI) scan showed a bilateral pars defect at the L5 disc level with only a mild disc bulging at L4-5 and L5-S1, while there was no evidence of spinal stenosis or disc herniation (*Id.*).  Further, the ALJ pointed to a negative electromyogram ("EMG") and nerve conduction study of January 1998 that showed no evidence of radiculopathy (*Id.*).

These examinations and objective medical results corroborate the medical findings contained in the record attributable to plaintiff's treating physicians during this

time period. On December 30, 1997, Dr. Galante indicated that plaintiff had only a partial disability and was able to return to work with restrictions (Tr. 166, 179). Dr. McAdam, another treating physician, echoed this sentiment following a January 23, 1998 examination by finding that plaintiff had a mild to moderate partial disability of a temporary nature. Dr. McAdam instructed plaintiff to continue with modified duty work (Tr. 242). This finding, a partial disability of a temporary nature, is consistent with that of plaintiff's subsequent visits with Dr. McAdam on March 18, 1998 and again on June 19, 1998. This indicates that the ALJ, in finding plaintiff not disabled during this time period, afforded the proper weight to the opinions of plaintiff's treating physicians. Moreover, the ALJ's determination is supported by substantial evidence in the record.

In contrast, during an examination in June 1998, Dr. Kuruvilla, a physiatric independent medical examiner, found plaintiff to have tenderness and limitation of motion of the lumbar spine and also found neurological loss (Tr. 21). From this date forward, objective tests revealed more severe findings in plaintiff's medical condition.

On February 16, 1999, under the care of Dr. James White, plaintiff underwent a bilateral instrumentation and fusion from L4 to the sacrum with reduction of the listhesis at L5-S1 level (Tr. 270-76). Plaintiff returned to Dr. White for post-operative evaluations as well as further follow ups conducted on March 8, 1999, March 24, 1999, and April 21, 1999 (Tr. 305-10). During these visits, Dr. White continued to opine that plaintiff was totally disabled (*Id.*).

However, on May 18, 1999, a state agency physician reviewed plaintiff's medical records and assessed his residual functional capacity based on these findings (Tr. 324-31). This physician opined that plaintiff could lift up to twenty pounds, stand and walk

for about six hours, and sit for about six hours (Tr. 325).  On June 23, 1999, a second state agency physician affirmed the initial RFC assessment (Tr. 331).

While these assessments indicate that plaintiff is not disabled, the ALJ afforded controlling weight to the opinion of Dr. White, who opined that plaintiff was totally disabled until November 1999 (Tr. 344-48).  In doing so, the ALJ did not reject the expert opinion of plaintiff's physician, but instead found plaintiff to be totally disabled from June 1998, when initially examined by Dr. Kuravilla, up through his November 18, 1999 examination by Dr. White (Tr. 346-47).

The ALJ's determination that plaintiff was no longer disabled as of November 1999 is based upon the results of objective tests as well as Dr. White's findings during a November 18, 1999 examination. A lumbar CT scan showed an intact fusion with no evidence of recurrent disc herniation (Tr. 22). An EMG and nerve conduction studies revealed no radiculopathy and no peripheral nerve entrapment (*Id*.).  Dr. White, on November 18, 1999, noted that plaintiff's condition had improved and that plaintiff had reached maximum medical improvement (Tr. 346-47).  In addition, Dr. White stated that any persisting leg pain was not secondary to the lumbar spine or its nerve roots (Tr. 346).  Dr. White recommended that plaintiff participate in such activities as "walking, swimming, biking, Stairmaster, or [the] treadmill." (Tr. 347.)  Thus, as of November 1999, Dr. White concluded that plaintiff was capable of light to sedentary work and stated that his level of disability should be decreased to marked (*id.*).

The record indicates that Dr. White reported on March 9, 2000 that plaintiff was feeling "terrible" and complained of low back pain with radiation through the entire left lower extremity, although he had a normal neurological examination at the time (Tr.

409). Dr. White recommended a follow-up MRI and additional surgery to remove the spinal instrumentation to allow inspection of the spinal fusion (Tr. 410). Thereafter, on April 14, 2000, Dr. White wrote a letter to the ALJ and stated that plaintiff "has been unable to engage in substantial gainful employment since September 17, 1997 and continues to do so. It cannot be determined at this time when he will be able to return to gainful employment." (Tr. 411).

While a treating physician's statement that a claimant is unable to work is not determinative, *see Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999), here it is unclear whether the ALJ even considered Dr. White's most recent assessment of plaintiff's condition or simply rejected it without comment or explanation. The ALJ failed to acknowledge the March and April 2000 letters of Dr. White and provided no "good reasons" for his rejection of Dr. White's assessment that plaintiff was unable to engage in gainful employment as required by the Regulations. Accordingly, remand is necessary to evaluate the more recent opinions of plaintiff's treating physician.

## IV.   Credibility

The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment regarding the true extent of the pain alleged. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979). In his findings, the ALJ determined that the plaintiff was disabled from June 23, 1998 through November 1999. However, the ALJ determined that the record and plaintiff's testimony conflicted with his claim for total disability before June 23, 1998 and after September 17, 1997 until the date of the decision. When the alleged symptoms suggest greater severity of impairment than the objective medical evidence alone, the ALJ must consider all the evidence submitted and

"the extent to which there are any conflicts between [claimant's] statements and the rest of the evidence . . . ." 20 C.F.R. § 404.1529(c)(4).  The ALJ will also consider other factors, such as daily activities, the location, duration, frequency, and intensity of symptoms, the type, effectiveness, and side effects of medication, and other treatment or measures taken to relieve those symptoms.  See 20 C.F.R. § 416.929(c)(3); Social Security Ruling 96-7P, 1996 WL 374186 (July 2, 1996).

In his determination, the ALJ considered the opinions of plaintiff's treating physicians in conjunction with plaintiff's testimony regarding the factors listed in 20 C.F.R. § 416.929(c)(3).  Specifically, the ALJ pointed to the fact that plaintiff "is able to perform some cooking and vacuuming and some laundry chores" (Tr. 22).  In addition, the ALJ noted that plaintiff testified that he is able to drive, read, go to the movies, dine out occasionally, and help his son get ready for school (*Id.*).  The ALJ considered the medications that plaintiff is taking, while emphasizing that the plaintiff has not been involved in any physical therapy sessions or additional treatment for his complaints of pain (*Id.*).  It is further noted that as of November 1999, Dr. White recommended that the claimant participate in such activities as "walking, swimming, biking, StairMaster, or [the] treadmill."  Thus, rather than recommending inactivity, plaintiff's treating surgeon recommended an active lifestyle (*id.*).

While the ALJ properly evaluated plaintiff's credibility in light of the Regulations, the court's direction that this case be remanded may necessitate a reconsideration of the ALJ's credibility determination.

## V.     Evaluating Plaintiff's Combination of Impairments

Plaintiff contends that the ALJ failed to properly assess the effect of the plaintiff's combined impairments on his ability to perform substantial gainful activity. Specifically, plaintiff alleges that the ALJ failed to consider pain as a separate impairment in addition to his degenerative disc disease. Although pain is considered a symptom and not an impairment, 20 C.F.R. § 404.1529(a), as discussed above, the ALJ considered the plaintiff's alleged pain in his decision (Tr. 21).

Additionally, plaintiff contends that the ALJ erred at the third step of the sequential evaluation process when he found that plaintiff's impairment did not meet the requirement in the Listings. The ALJ determined that as of November 1999, plaintiff experienced only "mild peripheral neuropathy" (Tr. 379-80) with no radiculopathy or peripheral nerve entrapment (Tr. 346-47). Thus, plaintiff did not meet the requirement of the Listing, in effect at the time of the hearing, for a vertebrogenic disorder which required both pain and an "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and senory reflex loss." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.05(c)(1) and (2) (1999).

## VI.    Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ failed to properly assess his RFC when he found that plaintiff was able to perform the full range of light work for the periods of September 17, 1997 to June 23, 1998 and November 1999 until the date of the decision. Specifically, plaintiff contends that the ALJ was required to call a vocational

expert to determine whether there was gainful work in the national economy that plaintiff could perform rather than merely applying the Grids**.**

According to the Regulations, non-exertional limitations exist "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the demands of jobs other than the strength demands . . . ." 20 C.F.R. §404.1569a(c)(1).  In this case, the record establishes that plaintiff would have difficulty tolerating and meeting certain demands of jobs other than strength demands during specific periods of his claim.  However, the medical evidence contained in the record indicates that these limitations did not exist throughout the entire period, before June 23, 1998 and after November 1999.

It is well-settled law that the application of the Grids is inappropriate if claimant suffers from a non-exertional impairment which diminishes his or her ability to perform a full range of work.  *Bapp v. Bowen*, 802 F.2d 601, 605-6 (2d. Cir. 1986).  However, as discussed above, plaintiff's complaint of a non-exertional impairment, specifically persistent and disabling pain from September 17, 1997 is contradicted by the medical evidence in the record, which includes recommendations by a treating physician to engage in an active lifestyle as of November 1999 as well as the objective medical tests and evaluations conducted in the same month.  The ALJ properly found that, for the periods September 19, 1997 through June 23, 1998 and November 1999 to the date of the decision, plaintiff's pain did not create a non-exertional limitation that significantly diminished the number of jobs available to the plaintiff.  The ALJ considered only plaintiff's exertional limitations in assessing his RFC, and thus properly relied upon the Grids in finding plaintiff not disabled.

15

**CONCLUSION**

Based on the foregoing analysis, and after a full review of the record, the court concludes that the ALJ's determination was not based on an appropriate view of the legal standards for assessing the medical opinions of treating sources. Accordingly, the Commissioner's motion for judgment on the pleadings (Item 16) is denied, plaintiff's cross-motion for summary judgment (Item 24) is granted, and this case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   02/26         , 2007
p:\opinions\02-566.feb907